May it please the Court, Counsel. My name is Michael Levine, and I represent Carolyn Exum. Your Honors, the Court requested that the parties be prepared to discuss particular points. I'll leave it to the Court to tell me when they want those points addressed. Let me just begin by saying that my first argument is that the district court abused its discretion in striking the pleadings, and that's because the error was a good-faith error, did not prejudice the State, and the State did not make any claim of manipulation in the district court below. Suddenly, now, before this Court, we have a claim of manipulation. I believe that the Court should have stopped or not permit the State to make the argument now when it never raised it below and when it never objected to any of defense counsel's motion below, including the motion asking the Federal district judge to reconsider its order striking the pleadings. I set forth in the affidavits and in the pleadings all the reasons for the delay. There was delay, and there was misreading of various orders. There's no question about that. But these were good-faith mistakes. They were not they didn't prejudice the State, and the Court striking the pleadings was an abuse of discretion. Now, turning to the next question, the amended pleading raised the claim, raised the claim that trial counsel is ineffective in advising Ms. Exum that she had no defense. And I'm submitting to the Court, and I'm arguing to this Court, that that on its face was ineffective assistance of counsel. Although in my brief I asked that the case be remanded to the district court for an evidentiary hearing, I'm going to ask this Court, that's my fallback position, I'd ask this Court to grant the writ just on the basis of the claim. Because there's no factual dispute. Now, under the case, Hibbler, that the Court asked me to ask the parties to address, there was a factual dispute. There's no factual dispute here in that even the PCR trial judge, the State post-conviction trial judge, found that the lawyer had told her that there were no defenses, his affidavit, he says. Trial counsel, Mr. Lyons, who unfortunately has passed away, had told her Mr. Lyons said in his affidavit there were no defenses. So we don't have any dispute in the record with respect to that statement. Well, that on its face is ineffective assistance for the reasons that I've argued to the Court in my briefs. There was a clear defense to the murder charge. The clear defense was that the co-defendant, Mr. Browning, in order to save his life, had made a pact with the State and was currying favor with the State and was implicating Exum. Now, whether that defense would succeed or not in front of a jury, we don't know. But it's a powerful defense, as every trial lawyer should know, that a — an accomplice seeks to — especially to save himself from the death penalty will say anything. And the Ninth Circuit law is abundant. I didn't cite it in my brief, but we have all kinds of law from the Ninth Circuit about how accomplice testimony is to be distrusted, the jury would be so instructed, particularly an accomplice who's trying to save his life. So there was a — Ginsburg. Well, let me — let me go to the procedural point, and that is we've got a counsel affidavit, we have the plea hearing, or the original plea, of course, we have the defendant's affidavit, and then we have the Hibler case that suggests that you don't need a hearing in every evidentiary situation. So given that we're looking at this several layers upstream, if you will, I'd appreciate your comment on how do you think we penetrate those layers in light of the standpoint of the defendant and also in light of cases that suggest you wouldn't have necessarily needed a hearing. The State court didn't necessarily err in that regard. Well, again, Hibler — in the Hibler case, the question was, was the trial lawyer ineffective for failing to see that the defendant was incompetent. But the record — the record in Hibler showed that this — the claim that the defendant made on its face could be rejected without an evidentiary hearing. Why? Not only did you have the plea colloquy, but that in itself can't possibly be the determinative factor, otherwise there would never be habeas petitions. What was determinative was that the Petitioner claimed, I was incompetent when I pleaded guilty because I — in part because I was on antipsychotic medications. But the record on the face of it showed the medical records from the county jail. And the medical records showed no antipsychotic medications. So he was not merely — he was not being refuted by an affidavit as to credibility. He was being refuted by hard evidence, medical evidence from the jail. Not only that, his testimony was being refuted by his own expert whom the defense had hired, a psychiatrist, who said, no, he's perfectly competent. This was the defendant's expert. So in that event, Hibler is one of those cases which says, yes, there are rare cases where you don't have to have evidentiary hearings, where what the Petitioner claims, you can take a look at the record and you can say, this is nonsense. This is on its face. Doesn't need — I can make findings here. But Exum's case is not that. Ginsburg. Well, we have to get to this contrary to Federal law, clearly established Federal law. You cite the case of Herrera v. Collins. But in Herrera, that was predicated on affidavits, was it not? I can't answer that, Your Honor, right now off the top of my head. But I will say that I'm relying on the prong, the third prong, which is an unreasonable determination of the facts. There was an unreasonable determination of the facts here when the trial judge, when Mr. Lyons did not advise counsel, his finding in the letter of opinion at ER 22 was that he did — Mr. Lyons did not advise Ms. Exum that she had no defense. That finding itself is an unreasonable determination of the facts, because right in Mr. Lyons' own affidavit, he says, the investigation turned up no defenses. So Judge Price's, the PCR judge's, findings was an unreasonable determination of the facts. And, Your Honor, I'm not avoiding the Herrera v. Collins question. I just frankly cannot remember the specific holding and facts of Herrera v. Collins, so I don't want to misrepresent it. Well, I'm looking at it, and I'm trying to — and I think it was based on affidavits. I thought that was based on affidavits. But you're now saying, well, don't look at the part that was based on affidavits where they made the determination without a hearing. Look at the principle of unreasonable determination. Yes. And it's an unreasonable determination of — well, for Herrera v. Collins, I believe that was the — that was the — whether there was a freestanding claim of innocence case. Actual innocence case. Yeah. No, that's a — Well, that's one that you cite to in your — I mean, I'm looking for some Federal law in your brief. Right. Right. Well, I'm looking at — one of the key cases is Taylor v. Maddox out of this Court, the Ninth Circuit case, which basically says EDPA — EDPA deference, the Anti-Death Penalty Act's deference, which normally now we — we give to State court findings, doesn't apply. That principle doesn't apply where there's an unreasonable — where there's been an unreasonable determination of the facts in the State court. And my argument is that's exactly what occurred here. Certainly with respect to the statement that there's no defenses, with respect to the statement there's no defenses, that that — for the judge to find that the lawyer didn't say that or didn't tell that to Exum, that was an unreasonable determination of the facts. Not only that, beyond that, if that's a legal finding or a mixed question, it's contrary to — it's an unreasonable — it's contrary to an unreasonable application of Strickland v. Washington, because, as I've said, any competent defense attorney would know that there was a powerful defense, and as a matter of law, that was an unreasonable — not just a wrong determination by the State court, an unreasonable determination of the State court. If you can clarify something for me, counsel, your argument as raised in the briefs couched the Court's error as the failure to hear live testimony. Was that because there actually was a hearing conducted in this case? There was a — there was a hearing. There was a hearing. There were no witnesses called by either side. There was a hearing. The hearing was on affidavits, on the depositions, and that is — that is done in Oregon. And the statute that the Court cited, the statute does say that you can have hearings like that, but the statute does not say anything about how credibility findings are to be made. The issue of what you can do is one thing, but the question is how are you to make credibility findings. The Oregon statutes don't — don't address that, and the findings here were unreasonable. And in that type of hearing, could Ms. Exum have subpoenaed witnesses? She could have. She could have. Requested the trial court to hear live testimony? She could have. She could have subpoenaed testimony. She could have called, as the State could have, but the Court will recall that Ms. Exum, in my judgment, can rely on this Court's observation in Manning v. Foster, which I cite in my brief. In Manning v. Foster, this Court held that trial attorneys who are charged with providing ineffective assistance of counsel have, quote, every incentive — I'm quoting from this Court's opinion — have every incentive, unquote, to keep the Petitioner from prevailing. Well, here's my problem, which you still haven't quite gotten to. Let's say you had to write the decision in this case in favor of your client. Yes. And your brief says that the district court erred because the findings were based on affidavits alone with no live testimony. So what — how would you frame the decision in your favor with respect to controlling Federal law? All right. That's a good question. I'm backing off a little bit from what I put in the brief. I don't think the Court has to go — actually has to decide that question. I think — and what I'm arguing now, what I argued in my — what I did argue in the brief, but not as focused as I'm arguing now. What I'm arguing now is that this Court can state — can basically grant the writ as a matter of law, right here, on the basis that the court's finding, that the PCR court's finding, that there was — that the trial counsel told Exum that there was no defense, that that was ineffective assistance as a matter of law, and it was contrary to Strickland v. Washington. It was an unreasonable application of Strickland v. Washington. What is the defense that was available to her? The defense was that she was being falsely accused of participating in the murder of her husband by the killer, the real killer, Mr. Browning, who was implicating her in the murder to save his own life, when it wasn't true that she was not involved in the murder. She was a lover, yes, but she was not involved in the husband's murder that Browning, on his own, because of love and obsession and things that drive men to commit murder for love, obsession, committed the murder. And now, when he's facing death and his lawyer tells him, you're facing death, you've got to come — you've got to cooperate with the state, the state believes that Exum is involved. They're going to — they're willing to make you a deal if you tell us Exum was involved, and that's what he does. He cuts the deal to save his life for 25 years to life instead of the death penalty. So the defense is that the jury could have found that the witness was not credible. That's right. That's it. Well, and that she was innocent. Yes. And that the State had insufficient evidence to prove guilt beyond a reasonable doubt. Yes, they could have entirely disbelieved he was the prime — he was the State's case. I mean, they had a dead body, they had a dead husband, and they had the killer. And the killer was saying, we did it together. She seduced me. She — she made me do it. And Exum's defense was, that's a blatant lie. He's saying that to save his life. That was the defense. And that — whether that would have persuaded a jury, I think it's a powerful argument. I think it's a — I think it could well have persuaded a jury. But that's not — you don't have to decide that. You've exceeded your time. I'm going to give you some time for rebuttal. Thank you, Your Honor. Good morning. May it please the Court. Cecil Rennish-Smith on behalf of Superintendent Hopeful. As Judge Wynn pointed out, there was an evidentiary hearing at the State court post-conviction proceedings. And so the Hibbler questions and the cases that Hibbler follows from aren't directly applicable because all of those cases involved decisions made by the State court pre-hearing at a — on a prima facie basis, so to speak, where the affidavits from the petitioner are viewed differently than they would be when they are presented in a full evidentiary hearing. So what happened in this case, there was a full evidentiary hearing under Oregon Revised Statute 138620. And under that statute, the court can hear live testimony. The court can accept affidavits. The court can accept depositions. The point of that statute is that the petitioner is driving the hearing. It's the petitioner's burden of proof, and therefore, the petitioner is allowed to put on the best evidence available to the petitioner. The legislative history of the statute indicates it was taken from the Uniform Post-Conviction Hearing Act that was drafted in 1955. The comments for that indicate that the point of allowing the court to hear evidence in various forms was to make it easier for the petitioner. Petitioner could have subpoenaed her trial attorney. Petitioner could have cross-examined him. Petitioner chose not to. Instead, petitioner offered up what evidence she had. The State responded with its evidence, including the trial attorney's affidavit. And it was up to the post-conviction court to reach a determination based on the evidence with which it had been presented. Based on the record with which it had presented, the court determined that the trial attorney's recitation of the facts, when combined with the plea petition and the colloquy at the change-of-plea hearing, indicated that Ms. Exum did receive effective assistance of counsel, that counsel's performance was not deficient. Counsel for Petitioner has not given a very clear answer as to what the State court should have done otherwise. And, frankly, I can't think of any other answer other than, you know, if this Court were to rule that the State court had an obligation sua sponte to say, this record is not good enough, Petitioner, why don't you give me some more evidence? And that just that is the unreasonable action. It was perfectly reasonable for the State court, when presented with all of the evidence that it had that Petitioner was offering, that the State was offering, to reach the determination it made. The counsel's argument is, I think, that the court could not decide credibility based on an affidavit. What's your response to that? I would disagree with that. I would say that in most situations, it would be preferable to have more than just affidavits, but if affidavits are all that have been presented by both parties, the court needs to make a decision. And I would point out that at no point did the State court say, I find Petitioner not credible or I find the attorney credible. What the State court's determination was, based on the record before it, it found the facts as presented in the attorney's affidavit. Is that a subtextual credibility? That sounds like a credibility. Well, perhaps, perhaps. But there's no law that says, there's no authority that I can find that says never can you make a credibility determination based solely on affidavits in an evidentiary hearing. Now, there is law in summary judgment cases or in prima facie-type cases where the evidence must be viewed in the light most favorable to the nonmoving party that the But that's not what happened in this case. What happened in this case is each party put on their best evidence, and the court made a determination based on that evidence. Now, I understand today that counsel is stating that this Court can issue the writ based solely on the fact that the State court made an unreasonable determination of facts in light of the evidence, pointing  to what Petitioner described as the State court finding that the attorney did not advise her of available defenses. The finding is on page 31 of the excerpt of record in the State court's findings of facts and conclusions of law. It's finding 42. And what it says is Petitioner failed to prove that her attorneys did not advise her of available defenses. There were none. And that is taken from the affidavit of the attorney saying that she had no defenses. And so what the State court is saying is she had no defenses. A failure to advise her of available defenses, you know, you can't, there is no failure. It's not deficient performance. Petitioner is now saying, but I had a defense. And he didn't tell me about it. Well, her defense is that she didn't do it. Her defense is that she's completely innocent and she's being framed. She didn't need her attorney to tell her that she didn't do it. And so the State court's finding is both not an unreasonable determination of fact and also it doesn't supply any reason for this Court to summarily deny the writ at this stage. But that issue, counsel, that her counsel was ineffective by telling her she had no defenses, that was raised in the district court in the amended petition that the district court struck. Correct. So we don't get to that unless the court finds that the trial court was abuse of discretion by striking that pleading in the first place. That's absolutely correct. And it's the State's position that the district court did not abuse its discretion. I'd be happy to talk about that issue if the court would like to. The ---- You know, there's obviously a lot of discretion and docket control, and there'd been a certain amount of frustration here given the deadlines and the passage. But was there any prejudice to the State? The State did not claim prejudice and the State does not claim prejudice now. But the test is not whether it was done in bad faith or whether it prejudiced the State. The test is whether there was a fairly flagrant disabuse of the court's scheduling orders and the court's docket orders. And I understand that Petitioner is encouraging this Court to disregard any argument the State had made about manipulation of the State or manipulation of the timelines because the State did not make those arguments below. I'd like to clarify that what the State is arguing is that the district court felt that it was being manipulated. The district court's ruling clearly shows its displeasure with what it characterized as Petitioner's manipulation of both the time schedule orders and the State's willingness to go along with more and more extensions. The State generally does not object to extensions for comedy reasons, for all sorts of reasons. But the district court reached a point where it had had enough and it issued its ruling and Petitioner disregarded it again. The district court was clearly within its discretion to strike that second amended petition and the memorandum in support of it. One final point, unless the Court has other questions about either the Oregon hearing procedures or the striking of the pleadings, the only other point I'd like to make very quickly is that Petitioner has never shown the prejudice. She hasn't satisfied the prejudice prong of the test. She hasn't shown that but for the ineffective assistance, the bad advice that she got for counsel, she would not have entered her guilty plea. The evidence in the record of that is a declaration that she submitted in the district court. That declaration was not submitted in the State court. There was no evidence presented to the State court that said, had it but for the bad counsel, I would not have pleaded guilty. There's nothing in the State court record for that. It's a declaration that was submitted in the district court. And under Cullen v. Pinholster, that is not appropriately before the court in terms of making its decision on the prejudice prong, unless the Court has any other questions. Ginsburg. Thank you. Thank you. Could you put a minute on the clock so that Mr. Levine has some rebuttal time? Your Honors, with respect to the last point that counsel just raised about there being nothing in the record, counsel is quite mistaken, but understandably so. Not part of the record in the excerpts of record, but part of the record below, and I'll be happy to, with the Court's permission, to submit it to the Court. Petitioner's first post-conviction, if I may, just give a copy to the government. Petitioner's first petition of post-conviction proceedings, give a copy to the Court. On page this was filed according to the date stamp August 15th, 2002. On page 5 of this petition, paragraph C, Petitioner does allege, or it's perhaps a lawyer writing for the Petitioner, but in any event, it's alleged, if the client had knowledge of the amount of flaws and errors made in critical stages of the case, a guilty plea would not have been made. So this allegation is set forth in the record, and that's sufficient to also the circumstances if the Court reads the deposition and the whole circumstances surrounding the entry of the plea and the filing of the petition, make it clear, in my view, that counsel would not have pleaded guilty had she been advised in fact that the plaintiff had a legal defense. Now, Your Honor, it's true that the Court, in order to reach the argument that I've made with respect to entering the being advised that there's no defense, the Court has to find that there was an abuse of discretion by the district court in striking the pleadings. I'm not going to repeat everything I've written and all the reasons why I made a good claim, but it was in good faith, there was no bad faith, there was no manipulation. And I'm glad to see that the State at least is backing off a claim that I manipulated the State. I guess the claim is now that I'm manipulating the district court. Nothing could be further from the truth. The Court sees good faith, reading a failure on my part, reading the docket entry sometimes when you get an order on PACER, sometimes I don't do it anymore, but I just read the PACER entry, did not actually open the pleading. And in this case, where someone's serving a 25-year prison sentence on habeas corpus and there's such a critical claim to say that, well, not to consider the motion to reconsider where I laid out all the reasons why I had misread the Court's pleading and where the State didn't object, for the district court, that's an — in my judgment, that's just an abuse. Thank you. I think we have your argument well in mind. Thank you. I thank both counsel for your argument this morning. The case of Exum v. Hofer was submitted.
judges: Alarcon, McKeown, Nguyen